53 P.3d 37 (2002)
113 Wash.App. 111
STATE of Washington, Respondent,
v.
Roy D. EAKER, Appellant.
No. 19882-1-III.
Court of Appeals of Washington, Division 3, Panel Seven.
August 22, 2002.
*38 William D. Edelblute, Attorney at Law, Spokane, WA, for Appellant.
James L. Nagle, Prosecuting Attorney, Walla Walla, WA, for Respondent.
*39 KURTZ, J.
Roy D. Eaker, a/k/a David Lewis, was charged with one count of first degree rape of a child based on incidents that allegedly occurred between January 1, 1988 and December 31, 1991. At trial, Mr. Eaker moved to dismiss because the applicable statute did not become effective until July 1, 1988. The court denied this motion when the State agreed to limit the prosecution to one specific incident that allegedly occurred after the statute was in effect. Mr. Eaker was subsequently convicted. On appeal, Mr. Eaker contends that (1) the court erred by not dismissing the charge based on the effective date of the statute; (2) the court erred by instructing the jury on a matter of fact; and (3) the evidence was insufficient to establish that the incident occurred after the effective date of the statute. We reverse Mr. Eaker's conviction and remand for a new trial because a jury instruction contained an impermissible comment on the evidence.

FACTS
Roy D. Eaker was charged with one count of first degree rape of a child based on allegations that he demanded oral sex from his half-brother on several occasions between January 1, 1988 and December 31, 1991. The victim, M.F., was eight years old when Mr. Eaker allegedly made the first demand. Mr. Eaker is eight years older than the victim.
At trial, M.F. testified that the first incident took place when he was eight and the family was living in a house on Second and Chestnut Streets. M.F. described an incident when Mr. Eaker demanded oral sex from M.F. M.F. complied with this demand because Mr. Eaker threatened to get M.F. in trouble their parents. M.F. recalled that he was forced to perform oral sex on Mr. Eaker during two separate incidents at this house.
According to M.F., the family moved to a house on Isaacs Street in 1990. A couple of months after moving into the house on Isaacs, Mr. Eaker again demanded oral sex from M.F. and M.F. complied with this demand. This type of incident was repeated between eight and ten times in the house on Isaacs. According to M.F., the last time the incident occurred, their parents were on vacation and he was supposed to be staying over at Judy Russell's house. But, M.F. told Ms. Russell that he wanted to return home so that he could play with toys and watch his television. Ms. Russell took him home because Mr. Eaker was staying there. M.F. did not think anything would happen because Mr. Eaker had not made any demands for oral sex for a while. However, a few hours after M.F. returned home, Mr. Eaker called M.F. downstairs and held his head while he performed oral sex on Mr. Eaker. M.F. at first stated that he was in sixth or seventh grade at the time of this incident, but he later testified that he did not remember what grade he was in.
M.F. did not tell anyone about the incidents while he was living in the house on Second, and he also did not tell anyone about the incidents in the house on Isaacs right away because he feared that Mr. Eaker "would come after me." Report of Proceedings (RP) at 60. M.F. recalled that he first made allegations about the abuse in 1995 and was interviewed by the police in 1996.
M.F. acknowledged that, he may have "mixed up"[1] whether the abuse occurred 10 times at the house on Second and 2 times at the house on Isaacs when he described the incidents to Detective Jeff Meyer. M.F. did not remember telling Detective Meyer that the abuse happened every week for a year or more, but M.F. acknowledged that the abuse could have occurred 50 times or more.
M.F. also acknowledged that the last incident occurred approximately four years prior to Mr. Eaker's arrest in March 1992. Later, M.F. indicated that the incidents occurred between 12 and 14 years prior to the trial, which began October 31, 2000. M.F. admitted that he told Detective Meyer that the last abuse occurred six to eight months before the house on Second burned down.
Detective Meyer testified that M.F. was involved in three auto accidents. The first accident was in March 1988, the second accident occurred in October 1988, and the third *40 accident occurred in June 1991. According to Detective Meyer, M.F. provided the Second Street address at the time of the second accident and the Isaacs Street address at the time of the third accident. Detective Meyer also stated that there was a fire at the house on Second in January 1993 and that Mr. Eaker went to jail in March 1992. Detective Meyer further testified that M.F. told him that the family moved out of the house on Second six to eight months before the fire at that house.
M.F. acknowledged saying in a recorded pretrial interview that there had been no abuse between the first accident and the second accident. While Detective Meyer testified that M.F. told him that the family moved out of the house on Second six to eight months before the January 1993 fire, M.F. stated that Mr. Eaker was arrested in March 1992 when they lived in Dayton and, before that, they had lived in Pomeroy for approximately one year. On redirect, M.F. conceded that if the fire at the house on Second was in 1993, he was not living in the house just a few months before the fire.
Following the presentation of the State's case, the defense moved for dismissal. The defense argued, in part, that the evidence did not support the charge because the last act of abuse occurred four years prior to March 1992 and the applicable statute did not come into effect until July 1, 1988. The State proposed to resolve this issue by an instruction electing a time period and one incident that allegedly occurred in the house on Isaacs Street between January 1, 1990, and December 31, 1991. The trial court denied the motion to dismiss.
Mr. Eaker testified on his own behalf and denied that he ever had M.F. perform oral sex on him. Mr. Eaker also confirmed that they moved to Dayton in 1991.
Following the close of the evidence, the defense objected to the State's proposed instruction specifying a single incident as the basis of the conviction. The trial court gave the State's proposed instruction as Jury Instruction No. 5. The defense also objected to the court's failure to give defendant's proposed instruction requiring the jury to agree on the same act in order to convict.
The jury returned a verdict of guilty and Mr. Eaker was sentenced to 80 months of confinement. Mr. Eaker appeals.

ANALYSIS
Alleged Due Process Violation.
When the evidence indicates that several distinct criminal acts have been committed, but the defendant is charged with only one count of criminal conduct, the constitutional requirement of jury unanimity is assured by either: (1) requiring the prosecution to elect the act upon which it will rely for conviction; or (2) instructing the jury that all 12 jurors must agree that the same criminal act has been proved beyond a reasonable doubt. State v. Petrich, 101 Wash.2d 566, 572, 683 P.2d 173 (1984). Failure to follow one of these options violates a defendant's state constitutional right to a unanimous jury verdict and his or her federal constitutional right to a jury trial. State v. Kitchen, 110 Wash.2d 403, 409, 756 P.2d 105 (1988).
Here, the State elected to choose a specific act and Jury Instruction No. 5 told the jury that in order to convict they had to find that the defendant had sexual intercourse with the victim on or between January 1, 1990 and December 31, 1991. Relying on State v. Aho, 137 Wash.2d 736, 744, 975 P.2d 512 (1999), Mr. Eaker contends his conviction violates due process because the evidence the jury relied on to convict him may have taken place prior to the effective date of the applicable statuteJuly 1, 1988.
In Aho, the court held that a conviction for child molestation violated due process where it was established that the jury may have based the conviction on acts by the defendant that were committed before the effective date of the criminal statute. The jury convicted Mr. Aho of three counts of first degree child molestation, RCW 9A.44.083, but did not specify whether the criminal acts occurred before the effective date of the statuteJuly 1, 1988.
The facts on the record do not support Mr. Eaker's argument that the jury considered acts that occurred prior to July 1, 1988. While the information alleged that the acts of *41 abuse commenced on January 1, 1988, the jury was instructed to convict based on whether a specific act of abuse occurred between January 1, 1990 and December 31, 1991. Hence, unlike the jury in Aho, the jury here considered specific dates when deciding whether to convict Mr. Eaker for a specific act of abuse.
Mr. Eaker may be confusing the Aho question with a sufficiency of the evidence question. There may be a question as to whether there was sufficient evidence for the jury to conclude that the specified act occurred between January 1, 1990 and December 31, 1991. But, nevertheless, the jury was instructed on specific dates. Additionally, the evidence presented to the jury suggests that the specified act occurred after the July 1, 1988 effective date. M.F. testified that the specified incident of abuse occurred at the house on Isaacs and that the family first moved to the Isaacs house in early 1990. M.F. gave some seemingly conflicting testimony when he stated that the specified incident of abuse happened four years before Mr. Eaker's arrest in March 1992. But, M.F. also testified that there was no abuse between the first automobile accident and the second automobile accident. Detective Meyer testified that M.F. gave the Second Street address at the time of the first and second accidents, and that the second accident occurred in October 1988; the third accident occurred in June 1991, and M.F. gave the Isaacs Street address. Hence, if there was abuse and the abuse occurred in the house on Isaacs Street, the abuse probably did occur after the effective date of the statute, but perhaps before the January 1, 1990 date given to the jury.
In sum, while there may have been evidence indicating that the specified incident occurred prior to the January 1, 1990 date specified in Jury Instruction No. 5, Mr. Eaker provides no basis for this court to conclude that the jury ignored Jury Instruction No. 5 and based his conviction on acts occurring prior to the effective date of the statute.
Jury Instruction No. 5. Jury instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his or her theory of the case. State v. Tili, 139 Wash.2d 107, 126, 985 P.2d 365 (1999). Article IV, section 16 of the Washington Constitution prohibits any judge from conveying to the jury his or her personal attitudes toward the merits of the case. State v. Foster, 91 Wash.2d 466, 481, 589 P.2d 789 (1979). This prohibition forbids words that convey the judge's attitude on the merits of the case or permit the jury to infer whether the judge believed or disbelieved certain testimony. Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wash.2d 15, 38, 864 P.2d 921 (1993) (citing Hamilton v. Dep't of Labor & Indus., 111 Wash.2d 569, 571, 761 P.2d 618 (1988)). The determination of whether a comment on the evidence is improper depends on the facts and circumstances in each case. State v. Painter, 27 Wash.App. 708, 714, 620 P.2d 1001 (1980). A judge cannot instruct the jury that matters of fact have been established as a matter of law. State v. Primrose, 32 Wash.App. 1, 3, 645 P.2d 714 (1982).
Here, the prosecution chose to elect a specific act. In Jury Instruction No. 5, the jury was told that in order to convict they had to find:
That on or between the 1st day of January, 1990 and the 31st day of December, 1991, the defendant had sexual intercourse with [M.F.] while [M.F.'s] parents were on vacation on the day that Judy Russel was babysitting [M.F.] and took him to his house at 1325 Isaacs Street, Walla Walla[.]
Clerk's Papers (CP) at 61. An instruction improperly comments on the evidence if the instruction resolves a disputed issue of fact that should have been left to the jury. State v. Becker, 132 Wash.2d 54, 65, 935 P.2d 1321 (1997). In Becker, the conviction was reversed because the language in a special verdict form resolved a disputed factual issue about whether a youth program was a school, thus relieving the State of its burden to prove all required elements for an enhanced sentence. Id.
Jury Instruction No. 5 improperly comments on the evidence because the instruction assumes as an undisputed fact that on a *42 day sometime between January 1, 1990 and December 31, 1991, Judy Russell served as a babysitter for M.F. and took him to his house on Isaacs. Even if we assume that Ms. Russell did babysit for M.F., and that she returned him to the house on Isaacs, this event may or may not have occurred between January 1, 1990 and December 31, 1991. The instruction is misleading in that it suggests that if a juror concludes that the specified act of abuse occurred on the day that Ms. Russell was babysitting for M.F., that juror need not also make a determination that the day Ms. Russell babysat fell sometime between January 1, 1990 and December 31, 1991.
The State argues that this instruction does not comment on the evidence because the instruction required the jury to determine whether the alleged criminal act took place and, additionally, required the jury to determine whether any of the alleged corroborating facts also took place. The State points out that the prosecution chose to elect a specific act. As a result, the State suggests that the instruction is proper because the corroborating facts serve only to identify the specific act elected.
The State alleged that the abuse occurred after January 1, 1990, and the State chose to identify the specific act by reference to corroborating facts rather than a specific date. Hence, even if the incident occurred as described by these facts, the jury should have been instructed that they must also determine that the date identified by those facts occurred between January 1, 1990 and December 31, 1991. The State's argument is unpersuasive because the instruction does not contain the word "and" and does not make it clear that the jury must determine that the criminal act took place, that it took place on the day that Ms. Russell babysat for M.F., and that this day occurred between January 1, 1990 and December 31, 1991. Because the prosecution elected a specific act and sought to identify the specific act by reference to corroborating facts, the "to convict" instruction had to be framed in a way that does not impermissibly comment on the evidence establishing these facts.
Once it is determined that a trial judge's conduct or remarks constitute a comment on the evidence, a reviewing court will presume the comments were prejudicial and the burden is on the State to demonstrate that no prejudice resulted. State v. Lane, 125 Wash.2d 825, 838, 889 P.2d 929 (1995). Here, the prejudice is obvious. The prosecution's case rested on the credibility of M.F. In Jury Instruction No. 5, the court bolstered M.F.'s credibility by conveying to the jury the court's belief that Ms. Russell babysat for M.F. on a date between January 1, 1990 and December 31, 1991.
Having concluded that Jury Instruction No. 5 was an impermissible comment on the evidence, we must address the question of whether this error requires reversal. Relying on Becker, Mr. Eaker suggests that the error here constitutes instructional error as it relieved the State of its burden to prove an element of the crime. Until recently, Washington case law held that an instruction that relieves the State of its burden to prove an element of a crime is automatic reversible error. State v. Jennings, 111 Wash.App. 54, 62, 44 P.3d 1 (2002). However, as the Jennings court explains, in Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the U.S. Supreme Court determined that a jury instruction that relieves the prosecution of its burden to prove an element of a crime is subject to harmless error analysis unless the error is structural and affects the framework under which the trial proceeds. Jennings, 111 Wash.App. at 62-63, 44 P.3d 1 (citing Neder, 527 U.S. at 8, 119 S.Ct. 1827). Under Neder, an error is harmless if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict. Neder, 527 U.S. at 15, 119 S.Ct. 1827 (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). "Applied to an element omitted from, or misstated in, a jury instruction, the error was harmless if that element is supported by uncontroverted evidence." Jennings, 111 Wash.App. at 64, 44 P.3d 1 (citing Neder, 527 U.S. at 18, 119 S.Ct. 1827).
Mr. Eaker suggests that the error here is structural because of the due process considerations *43 raised by the questions related to the effective date of the statute. We need not address the question as to whether the impermissible comment on the evidence here constituted structural error, relieved the State of its burden of proof, or merely bolstered M.F.'s credibility because the error here is clearly not harmless. M.F.'s credibility was central to the State's case. M.F. gave conflicting evidence as to when the alleged act of abuse occurred. At the very least, Jury Instruction No. 5 bolstered M.F.'s credibility in that it assumed that there was a day when Ms. Russell returned M.F. to the house on Isaacs and this day fell between January 1, 1990 and December 31, 1991. Based on the facts and evidence in this case, we cannot conclude beyond a reasonable doubt that the impermissible comment on the evidence did not contribute to the verdict.
We reverse and remand for a new trial.
I concur: SCHULTHEIS, J.
KATO, A.C.J. (dissenting).
The State chose to limit the prosecution to one specific incident. In order to convict Mr. Eaker of first degree rape of a child, Jury Instruction No. 5 directed the jury that it had to find:
That on or between the 1st day of January, 1990 and the 31st day of December, 1991, the defendant had sexual intercourse with [M.F.] while [M.F.'s] parents were on vacation on the day that Judy Russel was babysitting [M.F.] and took him to his house at 1325 Isaacs Street, Walla Walla[.]
CP at 61. "An impermissible comment [on the evidence] is one which conveys to the jury a judge's personal attitudes toward the merits of the case or allows the jury to infer from what the judge said or did not say that the judge personally believed the testimony in question." State v. Swan, 114 Wash.2d 613, 657, 790 P.2d 610 (1990), cert. denied, 498 U.S. 1046, 111 S.Ct. 752, 112 L.Ed.2d 772 (1991). When a jury instruction removes a disputed issue of fact from the jury's consideration, it is an improper comment on the evidence. State v. Becker, 132 Wash.2d 54, 65, 935 P.2d 1321 (1997).
The majority concludes that Jury Instruction No. 5 improperly comments on the evidence because it "assumes as an undisputed fact that on a day sometime between January 1, 1990 and December 31, 1991, Judy Russell served as a babysitter for M.F. and took him to his house on Isaacs." Majority at 41-42. In my view, however, it did not instruct the jury that these corroborating facts had been resolved and established as a matter of law. Rather, the instruction told the jury that not only did it have to find the alleged criminal act took place on a certain day, but also that it had to find each of those alleged corroborating facts happened that day as well.
The majority reasons that the instruction does not contain the word "and" between the corroborating facts, so it does not make clear "that the jury must determine that the criminal act took place, that it took place on the day that Ms. Russell babysat for M.F., and that this day occurred between January 1, 1990 and December 31, 1991." Majority at 41 - 42 But a common-sense reading of the instruction indicates the jury had to find the specific act alleged by the State took place on a certain day and each of the corroborating facts identifying the specific act also took place that day. Unlike the instruction in Becker, Jury Instruction No. 5 did not resolve any disputed issues of fact. Moreover, it did not indicate the trial court's opinion as to the evidence presented at trial. The corroborating facts in the instruction merely assured that the jury would consider the specific act relied on by the State for conviction. See State v. Tili, 139 Wash.2d 107, 127-28, 985 P.2d 365 (1999). It did not improperly comment on the evidence and was proper. I therefore respectfully dissent.
NOTES
[1] Report of Proceedings (RP) at 68.