FILED
COURT OF APPEALS
DIVISION II

2014 NOV -4 AM 10: 04

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JAMES L. BARTHOLOMEW,<br><br>Appellant. | No. 44104-7-II<br><br><br><br>UNPUBLISHED OPINION |

SUTTON, J. – James L. Bartholomew appeals his jury trial convictions and sentences for possession of a stolen motor vehicle (count one) and attempting to elude a pursuing police vehicle (count two). He argues that (1) the trial court's response to a jury question was a comment on the evidence, (2) the trial court erred when it responded to the jury question without notifying the parties and giving them an opportunity to respond, and (3) the judgment and sentence fails to properly set forth the sentences imposed. We affirm the convictions and sentences but remand for correction of the scrivener's errors in the judgment and sentence.

## FACTS

### I. BACKGROUND

On September 13, 2011, Aberdeen police officer Steven Gonzalez was on patrol in his marked patrol car when he saw a car that had been reported stolen stopped at a stop light. The car ran the red light and sped away when Officer Gonzalez turned his patrol car around. Officer Gonzalez initially pursued the speeding car, but he abandoned the pursuit because the car was driving recklessly and he was concerned that the pursuit was endangering others on the roadway.

"Within seconds" of terminating the pursuit, the dispatcher was notified of a vehicle having crashed; the crashed vehicle was the stolen car. Verbatim Report of Proceedings (VRP) (Jan. 10, 2012) at 11. Officers eventually apprehended Bartholomew, who had been driving the car, and his sister, who had been a passenger in the car.

The car's owner, Ashley Dion, came to the accident scene and identified the vehicle. The only existing key to the car was in the car's front passenger seat when she arrived.

## II. PROCEDURE

The State charged Bartholomew with possession of a stolen vehicle (count 1) and attempt to elude a pursuing police vehicle (count 2).[1] The case proceeded to a jury trial.

### A. Testimony

The State's witnesses testified as described above. In addition, Dion, a student at the local community college, testified that her car was stolen from her apartment complex parking lot on September 6; she reported the car stolen that day. She also told the officers that she had lost the only car key; she believed it had fallen off of the carabiner-like clip that she used to hold her keys. On September 13, she saw the car at a local store, and her boyfriend called the police. Dion testified that she did not know Bartholomew and that she did not give him permission to take her car. Dion did not testify about whether she was attending school at the time her car was stolen or give any specific dates as to when she was enrolled.

Bartholomew and his sister testified for the defense. Bartholomew's sister testified that Bartholomew had told her that he "got [the car] from a girl that he was seeing." VRP (Jan. 10,

---

[1] It also alleged that while attempting to elude, Bartholomew placed someone other than himself and law enforcement in danger. This is a sentencing aggravator. RCW 9.94A.834(1).

2012) at 52. Similarly, Bartholomew testified that he borrowed the car from Dion, whom he had been seeing at the time. Bartholomew further testified that he had met Dion at the local community college they both attended; that they started a secret, intimate relationship; and that they planned to be together after Dion broke up with her boyfriend. After they had been seeing each other for about three months, Bartholomew went to Dion's apartment, and she told him that she had decided to stay with her boyfriend. Bartholomew then asked to borrow her car, telling her that he wanted to go to the store and buy beer; and she gave him the key that was later found in the car's passenger's seat. But Bartholomew also testified that he was upset with Dion and that he asked to borrow her car because he thought that if he kept the car long enough, Dion would have to reveal their relationship to her boyfriend.

## B. Jury Question and Trial Court's Response

During its deliberations, the jury submitted the following written question to the trial court:

Where [sic] they in summer school at the college? Summer school: July, Aug, Sept.

Clerk's Papers (CP) at 16.

The trial court responded in writing, "You may only consider the evidence presented to you during trial." CP at 17. Neither the verbatim report of proceedings nor the trial court's minutes mentions the jury question or the trial court's response to the question.

## C. Verdict and Sentencing

The jury found Bartholomew guilty as charged. The trial court imposed concurrent sentences of 41 months and one day and 57 months for a total term of confinement of 57 months.

The judgment and sentence initially correctly lists count 1 as the possession of a stolen motor vehicle offense and count 2 as the attempt to elude a pursuing police vehicle offense in

section 2.1 ("Current Offenses"). CP at 26. But the judgment and sentence later transposes the sentencing data for each offense in section 2.3 ("Sentencing Data"), and purports to impose both sentences on count 1 in section 4.1 ("Confinement").[2] CP at 28.

Bartholomew appeals.

## ANALYSIS

Bartholomew argues that the (1) the trial court's response to the jury was a comment on the evidence, (2) the trial court erred when it responded to a jury question without notifying the parties, and (3) the judgment and sentence fails to properly set forth the sentences imposed. We affirm the convictions, but remand for correction of the judgment and sentence.

### I. NO COMMENT ON THE EVIDENCE

Bartholomew first argues that the trial court's response to the jury question was an improper comment on the evidence in violation of article IV, section 16 of the Washington State Constitution. We disagree.

The Washington State Constitution, article IV, section 16, provides "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." "A judge impermissibly comments on the evidence when he conveys a personal attitude toward the merits of the case." *State v. Ratliff*, 121 Wn. App. 642, 646, 90 P.3d 79 (2004) (citing *State v.*

---

[2] Section 4.1(a) of the judgment and sentence reads in part:
> *Confinement*. RCW 9.94A.589. A term of total confinement in the custody of the Department of Corrections (DOC):
>> 41 months [plus one day] on Count 1
>> 57 months on Count 1
>>> [concurrent].

CP at 28.

*Hughes*, 106 Wn.2d 176, 193, 721 P.2d 902 (1986)). "An instruction improperly comments on the evidence if the instruction resolves a disputed issue of fact that should have been left to the jury." *State v. Eaker*, 113 Wn. App. 111, 118, 53 P.3d 37 (2002) (citing *State v. Becker*, 132 Wn.2d 54, 65, 935 P.2d 1321 (1997)), *review denied*, 149 Wn.2d 1003 (2003). We review de novo whether an instruction amounts to a comment on the evidence. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

Bartholomew contends that the trial court's response, which directed the jury to consider only the evidence presented at trial, could have conveyed that the trial court did not believe there was any evidence that Bartholomew and Dion were in college together. This contention is not well taken. The jury's question was asking for additional evidence; the trial court's response was a neutral, accurate statement of the law in respect to that request. *See State v. Balisok*, 123 Wn.2d 114, 118, 866 P.2d 631 (1994). Accordingly, Bartholomew does not establish that the trial court's answer to the jury question was a comment on the evidence.

## II. JURY QUESTION

Bartholomew further argues that the trial court committed reversible error in responding to the jury question without first notifying the parties of the inquiry and allowing them the opportunity to comment on any response. The State does not address whether the trial court erred in failing to notify the parties of the jury question. Instead, it argues that any error was harmless. Even assuming, but not deciding, that the trial court did not advise the parties of the jury question and that the court responded to the jury question without allowing the parties an opportunity to

5

participate,[3] Bartholomew does not show that he is entitled to relief on this ground because any potential error was harmless beyond a reasonable doubt.

When a jury asks questions during deliberations, the trial court "shall notify the parties of the contents of the questions and provide them an opportunity to comment upon an appropriate response." CrR 6.15(f)(1). This rule has both state and federal constitutional underpinnings in the defendant's right to be present at all critical stages of trial, including the court's handling of jury inquiries. *Ratliff*, 121 Wn. App. at 646.

A trial court's error in answering jury questions without complying with CrR 6.15(f)(1) may be harmless if the State can show the harmlessness beyond a reasonable doubt. *See State v. Johnson*, 56 Wn.2d 700, 709, 355 P.2d 13 (1960), *cert. denied*, 366 U.S. 934 (1961); *State v. Jasper*, 158 Wn. App. 518, 541, 245 P.3d 228 (2010), *aff'd*, 174 Wn.2d 96, 271 P.3d 876 (2012). If the trial court's answer to a jury question is "'negative in nature and conveys no affirmative information,'" the defendant suffers no prejudice and the error is harmless. *Jasper*, 158 Wn. App. at 541 (quoting *State v. Russell*, 25 Wn. App. 933, 948, 611 P.2d 1320 (1980)); *see also Johnson*, 56 Wn.2d at 709 (communication with jury was not harmful when the court's response was "merely a refusal to communicate the information requested").

---

[3] Although neither the verbatim report of proceedings nor the trial court's minutes mention any jury question, the exact circumstances under which the trial court responded to the jury question is outside this record. Arguably, Bartholomew would have had to provide a narrative report of proceedings (RAP 9.3), an agreed report of proceedings (RAP 9.4), or affidavits from counsel and/or the trial court to affirmatively establish whether the trial court contacted counsel or allowed counsel the opportunity to comment on an appropriate response. *See State v. Njonge*, No. 86072-6 at *8 n.1 (Wash. Sept. 25, 2014) (Wiggins, J., concurring); *State v. Jasper*, 174 Wn.2d 96, 123-24, 271 P.3d 876 (2012).

We find *State v. Langdon*, 42 Wn. App. 715, 713 P.2d 120, *review denied*, 105 Wn.2d 1013 (1986), instructive. In *Langdon*, the trial court instructed the jury on the elements of first and second degree robbery, accomplice liability, and theft. *Langdon*, 42 Wn. App. at 717. During deliberations, the jury sent a note to the judge reading, "Does 'committing' mean aid in escaping?" *Langdon*, 42 Wn. App. at 717. The judge, without consulting with counsel, responded, "'You are bound by those instructions already given to you.'" *Langdon*, 42 Wn. App. at 717. Langdon argued that this communication violated CrR 6.15(f)(1) and his right to be present at all stages of the proceedings. *Langdon*, 42 Wn. App. at 717. Division One of our court disagreed and found that any error was harmless because the communication was "neutral, simply referring the jury back to the previous instructions." *Langdon*, 42 Wn. App. at 717-18.

As in *Langdon*, the trial court here erred to the extent it communicated with the jury without complying with RAP 6.15(f)(1). The trial court's response however merely directed the jurors to refer to the evidence before them, which, as we discuss above, was a wholly appropriate response to the jury's inquiry about evidence that was not presented at trial. The trial court's response was neutral in nature like that in *Langdon*, and no prejudice resulted from the trial court's response. *Langdon*, 42 Wn. App. at 717-18; *see also Jasper*, 158 Wn. App. at 542-43 (holding that trial court's responding to a jury question without advising counsel was not prejudicial because the court merely advised jury to re-read its instructions). Any potential error is therefore harmless beyond a reasonable doubt and this argument fails.

## III. SENTENCING

Finally, Bartholomew argues that sections 2.3 and 4.1 of his judgment and sentence erroneously transpose the sentencing information and the sentences for each of the two counts. He argues that these scrivener's errors require remand for correction. The State concedes the scrivener's errors on the judgment and sentence, but it argues that we are not required to remand this matter for correction because the sentences are concurrent and the intent of the document is clear. Although the errors here do not alter Bartholomew's sentence, remand for correction of the scrivener's errors is appropriate to avoid any potential confusion in the future.

We affirm the convictions and sentences but remand for correction of the scrivener's errors in the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Worswick, P.J.

Lee, J.